**Ruby MARSEE**

v.

**CSX TRANSPORTATION, INC.,
Lafollette Ambulance Service
and Campbell County.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Submitted on Briefs, Jan. 11, 2008.

March 4, 2008.

Permission to Appeal Denied by
Supreme Court Sept. 29, 2008.

Glen B. Rutherford, Knoxville, Tennessee, for appellant.

Keith L. Edmiston, Knoxville, Tennessee, for appellees.

## OPINION

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

In this wrongful death action, plaintiff sued the ambulance service for failing to timely transport the deceased to the hospital. The Trial Court, upon hearing the evidence, directed a verdict for the defendants. In a Motion for a New Trial, plaintiff asked the Court to grant a new trial because a material witness who was not presented at trial was later located. The Trial Court denied plaintiff's Motion and on appeal we affirm the Judgment of the Trial Court.

This is a wrongful death action brought by the mother of the deceased against the LaFollette Ambulance Service, Campbell County and CSX Transportation, Inc.

She alleged that the ambulance took an unreasonable amount of time to arrive to transport her daughter, and that the employees of the ambulance service were "inept, clumsy, and incompetent" in their efforts to assist the deceased. Further, that CSX was negligent in blocking the roadway for an unreasonable time when the ambulance was making the call, and that the ambulance driver failed to take an alternate route.

Motions for summary judgment were filed and the Trial Court granted summary judgment to CSX. The Trial Court stated the plaintiff's counsel advised the Court that plaintiff would not resist that Motion, but overruled the Motion for Summary Judgment as to the remaining defendants.

The Trial was held on December 28, 2006, and before trial began, the attorneys discussed whether Mike Wyant's deposition could be introduced, as plaintiff was claiming that he was out of state and unavailable to testify. Plaintiff's counsel stated that plaintiff had told him that she understood Mr. Wyant had moved to Indiana, no subpoena was issued because he "did not know where to start". Plaintiff took the stand on this issue, and testified that it was her understanding that Connie Wyant had been arrested in the

last few days, and was currently in jail. She testified that she had gone to see Connie's mother to try to reach Connie, and that her mother said that she had been arrested on meth charges. She testified that Connie told her about two weeks ago that Mike had called and asked Connie to come to get him, and Connie refused. Plaintiff admitted she did not ask Connie how to get in touch with Mike Wyant, or where he was.

The Court had Connie Wyant brought from the jail, and she testified that she was still married to Mike, but they had not been together for over three years, and that Mike was in Indianapolis, Indiana, but she did not know how to reach him. She admitted that Mike had left a message a couple of weeks ago asking her to call him, but she did not. Further, that she knew where Mike's mother lived, and had her address and phone number.

Following this testimony, the Court ruled that Mike Wyant's deposition could not be used, because there was no effort made to secure his presence at trial.

At the conclusion of plaintiff's proof, plaintiff rested, and defendants made a Motion for a directed verdict. The Court then allowed plaintiff to put Jerry Brown on as an adverse witness.

Brown testified that he was one of the paramedics who responded to the call about the deceased, and that it took 17 minutes to get to the Wyant residence. He estimated that they had to sit and wait on the train to clear for 7–10 minutes. Brown testified that they had no way to call ahead and see if a train was there, and that there was an alternate route, but they did not opt for that, as it would have taken at least 5 additional minutes.

Brown testified they might have been able to get to the Wyant residence in as little as 7 minutes if the train had not been there, but it might have taken 10 minutes, and that had they tried to take an alternate route, it would have added time to that 7–10 minutes. He concluded that there was no way to get to the Wyant residence in less than 10 minutes with the train there, even if they took an alternate route.

Plaintiff again rested, and defendants renewed their Motion for directed verdict. The Judge discussed that he did not think plaintiff had met her burden of proof, since Dr. Beam testified that the paramedics would have had to have gotten there in ten minutes (and this was assuming that CPR was started earlier). The Judge noted that the proof showed that when the ambulance arrived, the deceased was not breathing and it took additional time to start CPR.

Defendants argued that plaintiff had failed to show that if the ambulance had taken an alternate route the deceased would have survived, and argued that plaintiff had failed to show that any negligence on the part of the paramedics was the cause of the deceased's death. The Court found the motion to be well-taken, and granted a directed verdict in favor of defendants

Plaintiff filed a Motion for New Trial, asking the Court to consider the affidavits of plaintiff and Mike Wyant. Plaintiff's affidavit states that during the summer of 2006, she ran into Connie Wyant and told her she would probably need Mike to testify at trial, and Mrs. Wyant told her she did not know how to reach him. Mr. Wyant's affidavit states that he and Connie separated in 2003 and he moved to Indiana. Wyant stated that he returned to Campbell County in 2007, and that during that time period, he had no contact with plaintiff. Wyant stated that at least 45 minutes passed from the time of his first phone call until an ambulance arrived.

In responding to the Motion, defendants argued that a new trial should be denied because plaintiff had not shown that reasonable efforts were made to secure Wyant's appearance at trial, and that plaintiff was seeking to introduce a new line of proof, which was improper. The Court denied the Motion for New Trial, finding that the medical proof presented by plaintiff failed to show that any negligence on the part of the paramedics caused the deceased's death, and that plaintiff had also failed to show that this evidence would have affected the outcome of the trial. Further, that the new evidence would have been duplicative of or inconsistent with the testimony of other witnesses who testified at trial. The Court also found plaintiff failed to act with reasonable diligence in procuring the testimony of Mike Wyant for trial, and in failing to issue a subpoena or conduct a reasonable investigation into the witness's whereabouts.

The issues presented on appeal are:

1. Whether the Trial Court erred in granting the Motion for Directed Verdict?
2. Whether the Trial Court erred in failing to grant plaintiff a new trial based on the Affidavit of Mike Wyant?

The Supreme Court has previously made clear the proper standard of review in dealing with a motion for directed verdict:

> The standards governing trial courts in ruling on motions for directed verdict or JNOV in negligence cases are well established. In ruling on the motion, the court must take the strongest legitimate view of the evidence in favor of the non-moving party. In other words, the court must remove any conflict in the evidence by construing it in the light most favorable to the non-movant and discarding all countervailing evidence. The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence. If there is any doubt as to the proper conclusions to be drawn from the evidence, the motion must be denied.

*Eaton v. McLain,* 891 S.W.2d 587, 590 (Tenn.1994) (citations omitted).

Thus, in this case, we must take the strongest legitimate view of the evidence in favor of plaintiff, discard all countervailing evidence, and determine if reasonable minds could differ as to the conclusion to be drawn.

■ Plaintiff's only expert was Dr. Beam, and he testified basically that the deceased would have had a chance of survival if the paramedics could have gotten there within ten minutes after her cardiac arrest, assuming that CPR was done and begun early. The only proof on the time frame is that the travel time would have taken 7–10 minutes for the ambulance to arrive without the train blocking the road, and that to take an alternate route would take at least 5 additional minutes, based on the testimony of plaintiff and others. Thus, with the train blocking the road (which defendants could not foresee nor control) the best possible scenario would put the ambulance arriving 12 minutes after it was called, which would be outside the requisite 10–minute window needed for a chance of survival from the testimony of the expert witness. Further, the testimony was that CPR was not begun immediately, but at best was begun 5–10 minutes after the deceased had become unconscious. On the evidence, the plaintiff did not meet her burden of proof to show that any negligence of the paramedics in choosing to wait on the train rather than taking

an alternate route was the cause of the deceased's death. We conclude that the Trial Court properly directed a verdict for the defendants.

Finally, plaintiff asserts that she should have been granted a new trial based upon the Affidavit of Mike Wyant, who stated therein that it took at least 45 minutes for the ambulance to arrive. Plaintiff did not show that this is "newly-discovered" evidence, as she now claims, because she knew Mr. Wyant was a fact witness, knew generally where he was living and someone who could contact him (i.e. Connie Wyant) but made no effort to get in touch with him nor to secure his presence at the trial. See *Seay v. City of Knoxville,* 654 S.W.2d 397 (Tenn.Ct.App. 1983).

Moreover, his testimony does not aid the plaintiff's case, as other witnesses (Ms. Wyant and Ms. Braden)[1] testified they believed it took the ambulance at least 30 minutes to arrive after the seizure, which does not change the fact that plaintiff failed to prove that the ambulance could have arrived in time to save the deceased's life. The Trial Court did not err in denying plaintiff's motion for new trial on this basis.

The Judgment of the Trial Court is affirmed, and the cause is remanded with the cost of the appeal assessed to Ruby Marsee.

---

1. Braden testified it seemed like 30 minutes before the ambulance arrived, but she never looked at a clock. Wyant testified she "knew" it took the ambulance at least 30 minutes to get there. She didn't check the clock.